**Frank J. TURNER**

v.

**II DIAMOND MOTORS, INC., doing business as Diamond Mazda, John Does 1–10, Chrysler Credit Corporation, ABC Insurance Company and XYZ Insurance Company.**

Civil Action No. 96–336–B–M1.

United States District Court,
M.D. Louisiana.

Feb. 23, 1998.

Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Sheila A. O'Laughlin, Edelman & Combs, Chicago, IL, O. Randolph Bragg, Chicago, IL, Garth Jonathan Ridge, Baton Rouge, LA, for Frank J. Turner.

William Chad Stelly, Scott McQuaig, McQuaig & Solomon, Metairie, LA, for Diamond Motors Inc., II Diamond Motors, Inc., Kelley Brook, Scott McQuaig, Robert Andre.

Paul S. West, McGlinchey Stafford Lang, Baton Rouge, LA, Anthony Joseph Rollo, Jr., Lauren L. Zimmermann, McGlinchey Stafford Lang, New Orleans, LA, David S. Willenzik, McGlinchey Stafford Lang, New Orleans, LA, for Chrysler Credit Corp.

## RULING ON DEFENDANT II DIAMOND MOTORS, INC'S MOTION FOR SUMMARY JUDGMENT MOTION TO DISMISS AND/OR MOTION FOR SUMMARY JUDGMENT ON RICO CLAIMS

POLOZOLA, District Judge.

This matter is before the Court on the defendant II Diamond Motors' motion for summary judgment and defendant Robert B. Andre's motion entitled "Rule 12(b)(6) motion to dismiss and/or motion for summary judgment on RICO claims." Because the Court has considered and relied on evidence outside of the pleadings, the Court will treat the defendant's motion to dismiss the RICO claims as a motion for summary judgment. For reasons which follow, the defendants motions for summary judgment are GRANTED.

### FACTS AND PROCEDURAL HISTORY

The plaintiff, Frank J. Turner ("Turner") has filed claims against the various defendants [1] under the Truth in Lending Act ("TILA") [2], the Racketeer Influenced and Corrupt Organizations Act ("RICO") [3] and a state law claim for "equitable restitution." [4] These claims allegedly arise from the purchase by Turner of a 1993 Isuzu pickup truck from Diamond on or about April 15, 1995. The selling price of the vehicle was $17,-600.00. Turner received a trade-in allowance of $3,500.00. In addition to the customer expenses and state and city sales taxes, Turner was charged $110.00 for "title and transfer fee" (hereinafter "license fee"). The amount Diamond actually paid the State of Louisiana as a license plate fee was $36.00. [5]

---

1. The defendants in this action are II Diamond Motors ("Diamond"), Chrysler Financial Corporation ("CFC"), ABC Insurance Company, XYZ Insurance Company and Robert B. Andre. The fictitious defendants named by the plaintiff will be ignored by the Court pursuant to the Federal Rules of Civil Procedure. Defendants Benny Andre and Kelly Brooks have been dismissed from the suit without prejudice.

2. 15 U.S.C. § 1601, et seq.

3. 18 U.S.C. § 1961, et seq.

4. The plaintiff filed a motion to certify this suit a class action lawsuit, but as of the date of this ruling, the Court has not ruled on that motion.

5. According to the affidavit of Robert Andre, the services provided for the $110 license fee consisted of:

| | |
|---|---|
| 1) license plate fee | $ 36.00 |
| 2) temporary license plate tag fee | $ 4.00 |

On April 11, 1996, Turner filed a class action suit in this Court. The initial complaint alleged violations of the TILA and RICO. The RICO claim was only filed against Robert B. Andre, who was named as a defendant in an amended complaint.

A motion for summary judgment has previously been granted in favor of CFC. Summary judgment has also been granted in favor of Diamond over the following claims. The Court held that the alleged understatement of the "finance charge" as to the $110.00 "license fee" was not a violation of TILA, since it met the "comparable cash transaction" exception. Because the "license fee" is not a "finance charge" as defined by TILA, the "finance charge," the "amount financed," and the "annual percentage rate" were not inaccurately disclosed in violation of TILA. The Court also ruled, with the consent of the parties, that the $5.00 mortgage fee was a "cost of doing business," and thus properly excluded from the "finance charge." Finally, the Court ruled that Turner could not recover from the defendants on his state law unjust enrichment claim.

There remains a TILA claim against Diamond which is the subject of the pending motion for summary judgment.

Also before the Court at this time is defendant Robert B. Andre's motion for summary judgment on the RICO claims.

## SUMMARY JUDGMENT

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[6]

The well-established criteria that there must be no *genuine* issue of *material* fact before summary judgment will issue insures that a properly supported motion will not be defeated simply by the "existence of some alleged factual dispute."[7] With respect to "materiality," because the underlying substantive law is referenced to determine what facts are material,[8] only factual disputes that might affect the action's outcome under governing law can properly preclude summary judgment; disputes over facts which have no effect on the action's resolution are irrelevant.[9] In addition, even if material, a factual dispute will not prevent summary judgment if the dispute is not "genuine." Such a conclusion is reached when the evidence could not lead a rational trier of fact to return a verdict for the non-moving party.[10] In examining the record, the Court will view the evidence and draw all reasonable inferences therefrom in favor of the non-moving party.[11]

As always, the moving party bears the initial burden of establishing that there is no genuine issue of material fact.[12] In this situation, where the moving party does not bear the burden of proof on the issue at trial, the movant may discharge its burden by simply informing the Court of the basis for its motion and either producing evidence that negates the existence of a material element in the non-moving party's claim or defense or identifying to the Court those portions of the record which demonstrate the lack of proof supporting a crucial element of the non-movant's case.[13]

| 3) certificate of title fee | $ 18.50 |
| 4) Dept. of Public Safety handling | $ 5.50 |
| 5) notary fee | $ 15.00 |
| 6) documentation fee | $ 35.00 |
| Total | $114.00 |

**6.** Fed R.Civ P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Cormier v. Pennzoil Exploration & Prod. Co.,* 969 F.2d 1559, 1560 (5th Cir.1992).

**7.** *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

**8.** *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

**9.** *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

**10.** *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. *See also Kelley v. Price–Macemon, Inc.,* 992 F.2d 1408, 1413 (5th Cir.1993) ("If, on the other hand, the factfinder [sic] could reasonably find in [favor of the non-moving party], then summary judgment is improper.").

**11.** *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513; *Newport Ltd. v. Sears, Roebuck & Co.,* 6 F.3d 1058, 1064 (5th Cir.1993).

**12.** *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

**13.** *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2553; *Latimer v. Smithkline & French Labs., Div. of Smithkline Beckman Corp.,* 919 F.2d 301, 303 (5th Cir.1990); *Lavespere v. Niagara Mach. &*

Once the moving party makes the proper showing, the burden shifts to the non-moving party to designate "specific facts" in the record, by way of non-conclusory affidavits, depositions, answers to interrogatories or admissions on file, which evidence that there is a genuine issue for trial.[14] Because it bears the ultimate burden of proof at trial, the non-moving party is required to establish each element crucial to its action "since a complete failure of proof concerning an essential element of the non[-]moving party's case necessarily renders all other facts immaterial."[15] The non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings and "must do more than simply show there is some metaphysical doubt as to the material facts."[16] When all the evidence presented by both parties "could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and summary judgment is proper.[17]

## INACCURATE "ITEMIZATION OF THE AMOUNT FINANCED" CLAIM

■ In its opinion on CFC's motion for summary judgment, the Court held it lacked evidence as to whether or not Turner requested an itemization of the amount financed. The Court now holds that such a determination is unnecessary, since "the creditor is allowed to skip this stage and simply provide the itemization of the amount financed without being asked for it."[18] Thus, the issue before the Court is whether the inclusion of the $110.00 license fee in the "[a]mounts paid to others on your behalf" section of the retail installment contract suffices under TILA as an itemization of the

*Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir. 1990).

14. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; Kelley v. Price–Macemon, Inc., 992 F.2d at 1413.

15. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552.

16. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

17. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

18. *Gibson v. Bob Watson Chevrolet–Geo, Inc.,* 112 F.3d 283, 285 (7th Cir.1997).

amount financed. Specifically, the Court must determine whether Diamond violated the TILA by failing to disclose that it was retaining for itself a portion of the $110.00 license fee.

Diamond claims that this issue is not properly before the Court because Turner failed to allege this claim in his original and amended complaints. Diamond further claims that Turner may have proceeded in this manner in an effort to avoid the more limited recovery available for a violation of the itemization of the amount financed requirements of TILA.

■ The Court finds that Turner has sufficiently, though inarticulately, set forth a claim against Diamond for failure to properly itemize the amount financed pursuant to TILA and Regulation Z as this claim relates to the "license fee." Paragraph 53 of the plaintiff's amended complaint states that "[i]n addition, Diamond made a false representation that $110.00 had been paid to the state of Louisiana for 'license fees,' when this was not the case, violating 15 U.S.C. § 1638 and 12 C.F.R. § 226.8."[19]

■ Thus, the issue before the Court is whether 15 U.S.C. § 1638(a)(2)(B)(iii) and 12 C.F.R. § 226.18(c)(1)(iii) require that Diamond disclose: (1) an upcharge is included in the "license fee;" (2) the specific amount of the upcharge; or (3) the fact of or amount of the upcharge. It is clear that Diamond did not disclose that it kept a portion of the license fee for itself in the retail installment contract.[20]

For the reasons set forth in the Court's "Ruling on Motion for Summary Judgment Filed by Hancock Bank of Louisiana" in *Green v. Levis Motors,* 994 F.Supp. 735 (M.D.La. 1997)[21] the Court denies Diamond's motion for summary judgment on this issue.

19. Rec. doc. no. 16.

20. Diamond claims that documents other than the retail installment contract accurately itemize the amount of the licensing fee; thus, the plaintiff could compute the alleged upcharge. It is not necessary for the Court to decide this issue since the Court finds that Diamond was under no duty to disclose whether it had retained a portion of the license fee under the facts of this case.

21. C.A. 96–508, rec. doc. no. 94 (M.D.La.7/25/97).

■ Diamond asserts the "good faith" defense set forth in 15 U.S.C. § 1640(f).[22] For the reasons set forth in the Court's "Ruling on Coleman Investment, Inc.'s and Robert Coleman's Motion for Summary Judgment and Judgment on the Pleadings" in *Brown v. Coleman Investments, Inc.,*[23] the Court grants Diamond's motion for summary judgment on this issue. The Court holds that the "good faith" defense set forth in 15 U.S.C. § 1640(f) applies under the facts set forth in this case.

## RICO CLAIM

Turner has filed a RICO claim against Robert B. Andre.[24] The RICO action is based on Turner's claim that license fees charged to customers of Diamond were inflated, and constituted a scheme or artifice to defraud within the meaning of the Federal Mail and Wire Fraud Statutes, 18 U.S.C. § 1341–1343. Turner also alleges that this practice of inflating license fees has occurred over a period of years, and thus constitutes a pattern of unlawful activity within the meaning of RICO.

Turner's RICO claims against Robert Andre must be dismissed for several reasons. It is clear that Turner has failed to meet the standards set forth in *Williams v. WMX Technologies, Inc.*[25] and *Schaeffer v. Ascension College, Inc.*[26] for sufficiently alleging a

RICO claim. Thus, for reasons set forth in the Court's "Ruling on Motion to Dismiss or Alternatively for Motion for More Definite Statement" in *Green v. Levis Motors, Inc.,*[27] the Court grants defendant's motion for summary judgment on this issue.

■ Plaintiff has failed as a matter of law and evidence to prove that the defendants have inflated the license fees charged to customers. Therefore, the plaintiff has failed to show a scheme or artifice to defraud within the meaning of the Federal Mail and Wire Fraud Statutes, 18 U.S.C. § 1341–1343.

Turner places great weight on the alleged upcharges involved in the $15.00 notary fee and the $35.00 documentation fee that Andre has included in the breakdown of the $110.00 license fee. According to Turner, the presence of a salaried notary reduced the cost per notarization to Diamond well below the $15.00 charge. Turner also argues that certain expenses within the documentation fee were actually incorporated into the "customer services fee." Thus, Diamond did not actually incur expenses equal to the full amount charged as a documentation fee.

Diamond argues that simply dividing the number of vehicles sold by the salary of the notary as Turner has done is not an accurate method of determining the expenses actually incurred in association with the notary fee. Diamond claims that such a method fails to account for overhead expenses such as office

**22.** The plaintiff incorrectly argues that such a defense is not timely raised, since Diamond addresses this argument in its reply brief. The plaintiff cites Fifth Circuit cases for the proposition that parties may not raise new defenses in reply briefs. While such a rule does exist at the appellate level, it does not apply at the trial court level. The parties or the Court may raise new defenses at any time. Further, the plaintiff was afforded an opportunity to respond to Diamond's "good faith" defense in its surreply brief, and did in fact do so. The Court believes it has allowed all parties great latitude in raising new claims or defenses and filing supplemental briefs. The plaintiff has not been prejudiced by the Court's willingness to allow the parties the opportunity to fully argue their positions in this case.

**23.** 1998 WL 30645 (M.D.La.1998).

**24.** Plaintiff's original complaint alleged RICO claims "against the Does, only." Rec. doc. no. 1. Plaintiff's amended complaint alleged a RICO

claim "against Benny Andre, Robert B. Andre, Kelly Brook and the John Does, only." Rec. doc. no. 16. Plaintiff filed a motion to dismiss Benny Andre and Kelly Brooks on December 31, 1997. Rec. doc. no. 166. The Court granted plaintiff's motion to dismiss Benny Andre and Kelly Brooks. Rec. doc. no. 176. As mentioned in footnote 1, the fictitious defendants named by the plaintiff will be ignored by the Court pursuant to the Federal Rules of Civil Procedure. Thus, the only remaining defendant on the RICO claim is Robert B. Andre.

**25.** 112 F.3d 175 (5th Cir.1997).

**26.** 964 F.Supp. 1067 (M.D.La.1997).

**27.** 994 F.Supp. 735 (M.D.La.1997). *See Also Brown,* 993 F.Supp. 439 ("Ruling on Coleman Investment, Inc.'s and Robert Coleman's Motion for Summary Judgment and Judgment on the Pleadings").

space associated with keeping a notary on premises.

Because Louisiana Revised Statutes 6:956(E) authorizes $15.00 notary fees and $35.00 documentation fees,[28] it is not necessary for this Court to engage in an inquiry as to how and to what extent Diamond actually incurred its notary and documentation fees. The Louisiana legislature has already determined that these fees are acceptable for automobile dealerships such as Diamond to charge customers in connection with the purchase of vehicles. It would be a quantum leap to find a person guilty of a federal crime when the fees charged were actually authorized and approved by a valid state statute.

Because Turner has failed to prove an inflation of his license fee, he has also failed to prove a conspiracy to do so. Summary judgment in favor of defendant Robert B. Andre is proper on the RICO claim under the facts of this case.

### CONCLUSION

In conclusion, the Court finds that the "good faith conformity" defense set forth in 15 U.S.C. § 1640(f) is applicable under the facts of this case. Thus, the Court grants summary judgment on the issue of whether Diamond is required to disclose the fact of or the amount of the upcharges in "license fees" charged to the plaintiff.

The Court also grants Robert B. Andre's motion for summary judgment on the RICO claim.

Since all claims have now been resolved, judgment shall be entered dismissing plaintiff's suit against all defendants with prejudice.

---

**28.** LOUISIANA REV.STAT. 6:956(E) provides that:

(1) The seller is authorized in connection with any retail sale, including a retail installment transaction, to charge a fee for credit investigation, preparation of the documents necessary to perfect or satisfy a lien upon the objects sold, and any other charges incidental to the said retail sale. The maximum amount permitted to be charged as fees shall be thirty-five dollars. (2) In addition to the fee authorized in Subsection (E)(1), the seller is authorized to charge a notarial fee not to exceed fifteen dollars for notarization of the customer's chattel mortgage and other documents.