**Veronica DEBERRY, as mother and next friend of Shauntia Marae Deberry, Plaintiff,**

v.

**SHERMAN HOSPITAL ASSOCIATION, an Illinois corporation, Defendant.**

**No. 90 C 1173.**

United States District Court, N.D. Illinois, E.D.

Sept. 30, 1991.

Stephen F. Gray, Cook County State's Attorney's Office, Chicago, Ill., John W. Fisk, Kenneth Craig Chessick, Law Office of Kenneth C. Chessick, Schaumburg, Ill., for plaintiff.

---

John G. Langhenry, Jr., Robert H. Smith, Hinshaw & Culbertson, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This matter comes before this court on Plaintiff's Motion to Reconsider our decision of July 25, 1991, in which we granted summary judgment in favor of the defendant. 769 F.Supp. 1030. For the reasons set forth below, plaintiff's motion is denied.

## BACKGROUND

Plaintiff, Veronica Deberry ("Deberry"), has filed this action as mother and next friend of Shauntia Deberry ("Shauntia"), seeking recovery pursuant to COBRA 42 U.S.C. § 1395dd for the alleged medical misdiagnosis of Shauntia by Dr. Douglas Jackson ("Jackson") of the Sherman Hospital Association ("Sherman"). On January 10, 1988, Veronica took Shauntia to the emergency room at Sherman Hospital, complaining that Shauntia was suffering from a fever, rash, and a stiff neck that was tilted to the left, in addition to dispositional abnormalities such as lethargy and irritability. A nurse recorded these symptoms, and a second nurse gave Shauntia medication and drew blood. The nurse also recorded her own observation that Shauntia's head was tilted to the left and that she cried with movement.

Shauntia was then examined by Dr. Jackson. He detected tenderness in Shauntia's neck and left lymph nodes, and inflammation in her left ear. After taking Shauntia's medical history and conducting the examination, he ordered a blood test.

Based on the results of the physical examination and the blood test, Dr. Jackson determined that Shauntia had an acute ear infection, and accordingly he prescribed some medication. Dr. Jackson had considered the possibility that Shauntia was suffering from spinal meningitis, but ruled out that possibility after conducting the

examination and blood test. Two days after being treated by Dr. Jackson in the emergency room, Shauntia was admitted to Sherman Hospital diagnosed as having spinal meningitis.

Based on these allegations, the plaintiff argues that the treatment which Shauntia received on January 10, 1988 did not conform to the "appropriate medical screening examination" required by COBRA 42 U.S.C. § 1395dd, as amended by the federal Emergency Medical Treatment and Active Labor Act (hereinafter "§ 1395dd"), also known as "the anti-dumping act".[1] Plaintiff also asserts a pendant state claim for medical malpractice.

Sherman filed a motion to dismiss, alleging that § 1395dd did not apply to a patient who was not indigent and who was not totally denied care by the defendant hospital. After a careful reading of § 1395dd, this court held that such factors were not prerequisites to coverage. *Deberry v. Sherman Hospital Association*, 741 F.Supp. 1302, 1306 (N.D.Ill.1990). This court further held that the statute covered more than just an outright denial of treatment. We found that § 1395dd also applies to actions leading to the discharge of a patient with an unstable condition. *Id.* We therefore concluded that a complaint alleging that a hospital emergency room failed to adequately screen a patient or discharged a patient before the condition had stabilized constituted a sufficient pleading of a § 1395dd cause of action. Based on this reasoning, Sherman's motion to dismiss was denied on June 15, 1990.

Sherman then filed a motion for summary judgment, arguing that § 1395dd does not provide a civil remedy for negligence or misdiagnosis. This court agreed, and found that the 1988 version of § 1395dd required a plaintiff to show the hospital knowingly failed to conduct an appropriate medical examination for there to be liability under the statute. We found no evidence which could support a claim that Dr. Jackson and Sherman Hospital know-

---

1. Because the alleged actions occurred in 1988, this case must be decided under § 1395dd as it   was written at that time.

ingly discharged Shauntia with an unstable, emergency condition. Accordingly, on July 25, 1991 we entered summary judgment in favor of Sherman Hospital.

Plaintiff has now filed a motion for reconsideration pursuant to Rule 60(b) Fed. R.Civ.P. Plaintiff claims that this court misapprehended the basis for her federal claim in granting defendant's motion for summary judgment by viewing her claim as based solely on § 1395dd(d)(2). Therefore, plaintiff now asks that this court consider her claim under § 1395dd(d)(1) and § 1395dd(d)(3). For the reasons stated below, plaintiff's motion for reconsideration is denied.

## DISCUSSION

■ Sherman first argues that plaintiff's motion to reconsider pursuant to Rule 60(b) is actually a motion to reconsider based on the court's interpretation of the applicable law, and therefore should have been properly filed as a Rule 59(e) motion. Sherman claims that the plaintiff filed her motion pursuant to Rule 60(b) only because a 59(e) motion was barred since service was not made within ten days of the judgment. Deberry argues that her 60(b) motion is proper because this court misapprehended her claim by failing to consider the merits of her claim under § 1395dd(d)(1) and § 1395dd(d)(3) as well as under § 1395dd(d)(2) when ruling on Sherman's motion for summary judgment. A 60(b) motion is proper where a court has misunderstood a party or where it has made an error of apprehension, not of reasoning. *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99 (E.D.Va.1983).

Although we believe that Deberry filed the 60(b) motion because the 59(e) motion was unavailable, we will not deny her motion on those grounds. Based on Deberry's claim that this court misapprehended her arguments by considering her claim solely under § 1395dd(d)(2), we find some basis for a 60(b) motion. However, the court's inquiry will be limited to consideration of the other two provisions of § 1395dd; it will not reconsider its interpretation of § 1395dd(d)(2).

Initially, the court finds that Deberry alleged a cause of action only under § 1395dd(d)(2). Throughout these proceedings, plaintiff's argument has been focused solely on the hospital's alleged violation of § 1395dd(d)(2). Furthermore, in her complaint, Deberry sought the $50,000 relief which is provided in (d)(2). However, as the following discussion will show, even if Deberry had sought relief under § 1395dd(d)(1) and (d)(3), she would not have recovered.

■ Deberry now argues that her federal claim also arises under § 1395dd(d)(3), which provides in part:

(3) CIVIL ENFORCEMENT

(A) PERSONAL HARM—Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate.

§ 1395dd(d)(3) provides a supplementary remedy for violations of the statute; it does not create an additional cause of action. Therefore, Deberry must successfully allege a cause of action under either (d)(1) or (d)(2). In her motion, Deberry argues that she is entitled to damages as provided in § 1395dd(d)(3) even if she cannot establish a cause of action based on the "knowing" standard of § 1395dd(d)(2), because she can establish a cause of action under the negligence standard of § 1395dd(d)(1). After examining the provisions of § 1395dd(d)(1), the court rejects this argument.

§ 1395dd(d)(1) provides:

(1) AS [A] REQUIREMENT OF MEDICARE PROVIDER AGREEMENT—If a hospital knowingly and willfully, or negligently, fails to meet the requirements of this section, such hospital is subject to—

(A) termination of its provider agreement under this title in accordance with section 1866(b), or

(B) at the option of the Secretary, suspension of such agreement for such

period of time as the Secretary determines to be appropriate, upon reasonable notice to the hospital and to the public.

Deberry argues that Sherman acted negligently by failing to conduct an appropriate screening exam and by failing to properly treat Shauntia. Therefore, Deberry claims that she should be able to terminate Sherman's Medicare provider agreement pursuant to § 1395dd(d)(1), and as a result, would then be eligible to collect any available state law damages under § 1395dd(d)(3).

 This is an issue of first impression in this district, and our task is made more difficult by the sparse legislative history of § 1395dd. This section was enacted in response to the growing problem of hospitals "dumping" uninsured, indigent patients with emergency medical conditions. By enacting § 1395dd, Congress sought to combat the increasing problem of emergency rooms refusing to treat indigent patients. *See generally Stevison by Collins v. Enid Health Systems, Inc.*, 920 F.2d 710 (10th Cir.1990), *Burditt v. United States Department of Health and Human Services*, 934 F.2d 1362 (5th Cir.1991), *Thornton v. Southwest Detroit Hospital*, 895 F.2d 1131 (6th Cir.1990).

This court has already determined that Deberry does not have a claim under § 1395dd(d)(2) because she has not shown that Dr. Jackson or Sherman Hospital knowingly failed to conduct an appropriate medical examination under § 1395dd(a). We now find that Deberry cannot sustain a cause of action under § 1395dd(d)(1). The language of the statute indicates that the sanction of terminating a violating hospital's provider agreement is to be imposed at the initiative of the Secretary of Health and Human Services. We find no grounds to read into § 1395dd(d)(1) a private cause of action to institute termination of a hospital's provider agreement. Patients can be compensated for a hospital's knowing violation of the statute through the penalties imposed in § 1395dd(d)(2). Since Deberry cannot sustain a cause of action under (d)(1) or (d)(2), she is not entitled to the remedy provided in (d)(3).

Deberry is ultimately seeking relief for a medical misdiagnosis. § 1395dd is not the appropriate vehicle to pursue such a claim. As explained above, the statute was enacted to stop the widespread hospital practice of refusing to treat indigent patients, or providing them with a lower standard of medical care. In this case, we found that there was no evidence presented which showed that the hospital knowingly failed to conduct an appropriate medical examination. Shauntia was examined by two nurses and a doctor who took her medical history, examined her, and ordered a blood test. As we stated in our earlier opinion, the fact that Dr. Jackson's diagnosis and prescribed treatment may have been incorrect or may have differed from the action taking by a reasonable doctor under similar circumstances is irrelevant to a cause of action under § 1395dd. These arguments should be addressed in state court with Deberry's medical malpractice claim.

## CONCLUSION

Because we find that Deberry cannot sustain a cause of action under any of the provisions of § 1395dd, her motion to reconsider is denied.